ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Parte Peticionaria<br><br><br>v.<br><br><br>IAN GONZÁLEZ SÁNCHEZ<br><br>Parte Recurrida | TA2025CE00164<br><br>consolidado con<br><br>TA2025CE00165<br><br>y<br><br>TA2025CE00166 | *Certiorari,*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala Superior<br>de Guayama<br><br>Casos Núm.:<br>G LA2025G0058<br>al G LA2025G0062<br>G SC2025G0012<br><br>Sobre:<br>Arts. 6.05, 6.09 y<br>6.22 (3 cargos) Ley 168;<br>Art. 401 Ley 4 |
| EL PUEBLO DE PUERTO RICO<br><br>Parte Peticionaria<br><br><br>v.<br><br><br>TEMOC RAMOS RIVERA<br><br>Parte Recurrida | | *Certiorari,*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala Superior<br>de Guayama<br><br>Casos Núm.:<br>G LA2025G0063<br>al G LA2025G0067<br>G SC2025G0013<br><br>Sobre:<br>Arts. 6.05, 6.09 y<br>6.22 (3 cargos) Ley 168;<br>Art. 401 Ley 4 |
| EL PUEBLO DE PUERTO RICO<br><br>Parte Peticionaria<br><br><br>v.<br><br><br>ANGELYS JOAN SUÁREZ VÁZQUEZ<br><br>Parte Recurrida | | *Certiorari,*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala Superior<br>de Guayama<br><br>Casos Núm.:<br>G LA2025G0068<br>al G LA2025G0072<br>G SC2025G0013<br><br>Sobre:<br>Arts. 6.05, 6.09 y<br>6.22 (3 cargos) Ley 168;<br>Art. 401 Ley 4 |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de julio de 2025.

Compareció ante este Tribunal la parte peticionaria, el Pueblo de Puerto Rico (en adelante, el "Ministerio Público" o "Peticionario"), mediante tres recursos de *certiorari* presentados el 18 de julio de 2025, bajo los siguientes alfanuméricos: (1) TA2025CE00164, (2) TA2025CE00165 y (3) TA2025CE00166. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, el "TPI"), el 17 de junio de 2025, notificada y archivada en autos el 20 del mismo mes y año. Mediante el referido dictamen, el TPI declaró "Ha Lugar" las mociones de supresión de evidencia presentadas por el Sr. Ian González Sánchez (en adelante, el "señor González Sánchez"), el Sr. Temoc Ramos Rivera (en adelante, el "señor Ramos Rivera") y la Sra. Angelys Joan Suárez Vázquez (en adelante, la "señora Suárez Vázquez") (en adelante y en conjunto, "Recurridos").

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari* ante nuestra consideración.

**I.**

El caso de autos se originó el 17 de diciembre de 2024, con la presentación de múltiples denuncias en contra de los Recurridos por presuntas infracciones al Artículo 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la "Ley de Sustancias Controladas de Puerto Rico", 24 LPRA sec. 2401 (en adelante, "Ley 4-1971") y los Artículos 6.05, 6.09 y 6.22 de la Ley Núm. 168-2019, según enmendada, mejor conocida como la "Ley de Armas de Puerto Rico de 2020", que tipifican los delitos de distribución, transportación o posesión de sustancias controladas, portación, transportación o uso de armas de fuego sin licencia, portación, posesión o uso ilegal de armas largas semiautomáticas o escopeta de cañón cortado y fabricación, distribución, posesión y uso de municiones, respectivamente. 24 LPRA secs. 2401, 466d y 466u.

En esa misma fecha, el foro primario determinó causa para arresto contra los Recurridos por los delitos previamente mencionados. La vista preliminar se llevó a cabo el 31 de enero de 2025. Allí, el foro a *quo* determinó que existía causa para acusar a los Recurridos por los referidos

delitos. Así las cosas, el Ministerio Público presentó los correspondientes pliegos acusatorios. Más adelante, el 19 de marzo de 2025, la señora Suárez Vázquez presentó una "**Moción Urgente Solicitando Supresión de Evidencia al Amparo del Debido Proceso de Ley**", mediante la cual sostuvo que la evidencia con la que contaba el Ministerio Público para intentar probar su caso es producto de un registro ilegal. Asimismo, señaló que la declaración bajo juramento de los agentes interventores era insuficiente de acuerdo con la doctrina de testimonio estereotipado y dejaba de manifiesto la ausencia total de motivos fundados para haber intervenido con ella. En vista de lo anterior, le solicitó al TPI que declarara "Con Lugar" su petición, así como cualquier otro pronunciamiento procedente en derecho.

Oportunamente, el 4 de abril de 2025, el Ministerio Público presentó una "**Oposición a Solicitud de Supresión de Evidencia**" en la que alegó que el Tte. Juan A. De León Rodríguez (en adelante, "Tte. De León Rodríguez"), el Tte. Raymond Vázquez Vega (en adelante, Tte. Vázquez Vega") y el Sgto. Wilfred Rivera Rivera (en adelante, "Sgto. Rivera Rivera) tuvieron motivos fundados e información suficiente para creer que los ocupantes del vehículo de motor portaban armas de fuego en violación a la Ley de Armas, *supra*. Específicamente, indicó que, al momento del arresto, los referidos agentes contaban con la siguiente información: (1) existía un plan de trabajo respecto a la ocurrencia de detonaciones en varios municipios, (2) escucharon varias detonaciones de armas de fuego, (2) a la hora de las detonaciones no había tráfico, (3) en el estacionamiento de un establecimiento Walgreens observaron un vehículo con las luces prendidas, (4) al acercarse al vehículo observaron varios casquillos, (5) el Tte. Vázquez Vega se aproximó al vehículo para conocer si los ocupantes estaban seguros, y (6) el Tte. Vázquez Vega observó que la señora Suárez Vázquez estaba nerviosa, moviendo las piernas y pisando algo.

Además, expresó que, si los mencionados agentes del orden público no hubiesen ocupado la evidencia en el lugar de los hechos y hubiesen continuado el proceso de ocupar el carro para investigar y realizar un

inventario del vehículo, conforme al Formulario P.P.R. 128, igualmente hubiesen ocupado la evidencia en cuestión. En armonía con lo anterior, le solicitó al Tribunal que declarara "No Ha Lugar" la *Moción de Supresión de Evidencia* presentada por la señora Suárez Vázquez. Ese mismo día, el señor González Sánchez presentó una "**Moción Solicitando Supresión de Evidencia**" en la que afirmó que procedía la supresión de la evidencia incautada por: (1) ser producto de un arresto e intervención ilegal; (2) ausencia total de motivos fundados para la intervención y (3) un testimonio estereotipado que carecía de detalles imprescindibles para reforzarlo y ser probado.

Más adelante, el 11 de abril de 2025, el señor Ramos Rivera presentó una "**Moción en Solicitud de Supresión de Evidencia**" a través de la cual arguyó que, en el presente caso, fue objeto de un registro y posterior arresto sin la existencia de causa fundada, lo que, según alegó, constituía una vulneración de los derechos constitucionales que le asistían. Igualmente, señaló que el caso reflejaba un ejemplo de testimonio estereotipado, en el que los agentes se limitaron a narrar la comisión de un acto ilegal a plena vista. A tono con lo anterior, solicitó que se declarara "Ha Lugar" su petición de supresión de evidencia. El 21 de abril de 2025, el Ministerio Público presentó sus respectivas *Oposiciones* a las mociones presentadas por el señor Ramos Rivera y el señor González Sánchez en las que reiteró su postura en cuanto a la admisión de la evidencia incautada.

Así las cosas, la vista de supresión de evidencia se llevó a cabo los días 23 y 28 de abril de 2025. En dicha audiencia declararon, bajo juramento, las siguientes personas, a saber: (1) Tte. De León Rodríguez, (2) Tte. Vázquez Vega y (3) Sgto. Rivera Rivera. Tras aquilatar la prueba presentada, el 17 de junio de 2025, el TPI emitió una *Resolución* en la que declaró "Ha Lugar" las mociones de supresión de evidencia presentadas por los Recurridos. Dicha determinación fue objeto de tres (3) mociones de reconsideración, las cuales fueron rechazadas el 17 de junio de 2025.

Inconforme con lo anteriormente resuelto, el Ministerio Público acudió ante este Tribunal mediante los recursos de epígrafe, en los cuales señaló el siguiente error:

> El Tribunal de Primera Instancia erró y abusó de su discreción al suprimir la totalidad de la evidencia ocupada el 17 de diciembre de 2024, a pesar de que El Pueblo probó la razonabilidad de la intervención.

El 21 de julio de 2025, emitimos dos (2) Resoluciones mediante la cuales consolidamos los casos de epígrafe y les concedimos a los Recurridos un plazo para presentar sus respectivos alegatos en oposición. Ha transcurrido en exceso del término concedido a éstos sin que solicitaran prórroga o cumplieran con lo ordenado.

En vista de lo anterior, adjudicamos los méritos de los recursos sin el beneficio de sus comparecencias.

## II.

## A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711. Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. BPPR v. SLG Gómez-López, 213 DPR 314 (2023). Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la referida Regla establece los siguientes criterios a evaluar:

> A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v.  Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990).  Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. S.L.G. Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

La Cuarta Enmienda de la Constitución de los Estados Unidos y el Art. II Sec. 10 de la Constitución de Puerto Rico garantizan a todo ciudadano el derecho a la protección contra registros, incautaciones y allanamientos irrazonables que puedan afectar su persona, casas, papeles y efectos. Const. EE. UU, Emda. IV, 1 LPRA; Const. PR, Art. II, Sec. 11, 1 LPRA. Estos preceptos constitucionales tienen como objetivo resguardar la

intimidad y la dignidad del individuo frente a actuaciones estatales que resulten arbitrarias o carentes de razonabilidad. Pueblo v. Nieves Vives, 188 DPR 1, 11-12 (2013); Pueblo v. Díaz, Bonano, 176 DPR 601, 611-612 (2009); Pueblo v. Yip Berríos, 142 DPR 386, 397 (1997).

La garantía constitucional contra registros irrazonables se activa únicamente cuando la actuación de los agentes gubernamentales constituye un "registro" conforme a los parámetros constitucionales. Pueblo v. Díaz, Bonano, *supra*, pag. 612. Para que se configure dicha protección, es necesario que el reclamante mantenga una expectativa subjetiva de intimidad que, a su vez, sea reconocida por la sociedad como una expectativa legítima y razonable. Pueblo v. González, 167 DPR 350, 354 (2006). La interrogante medular gira en torno a si, considerando las circunstancias particulares del caso, la persona tiene la expectativa de que su intimidad se respete. Pueblo v. Díaz, Bonano, *supra*, pag. 612.

Como norma general, se prohíben los registros y allanamientos sin una orden judicial previa apoyada en una determinación de causa probable. Pueblo v. Salamanca Corchado, 210 DPR 582, 591 (2022). No obstante lo anterior, tanto la legislación como la jurisprudencia aplicable han reconocido diversas excepciones a la exigencia de una orden judicial para la validez de un arresto o registro. Entre las excepciones admitidas se encuentran las siguientes: (1) un registro incidental a un arresto legal; (2) un registro consentido voluntariamente de forma expresa o implícita, (3) un registro en situación de emergencia; (4) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo a través del olfato; (5) evidencia arrojada o abandonada; (6) un registro o allanamiento de una estructura abandonada; (7) evidencia obtenida durante un registro administrativo; (8) un registro tipo inventario; (9) una evidencia obtenida en un lugar público como resultado de canes para olfatear o (10) evidencia a plena vista. Pueblo v. López Colón, 200 DPR 273, 288 (2018).

En lo aquí pertinente, para que aplique la excepción de evidencia a plena vista, deben concurrir los siguientes requisitos: (1) que el objeto haya sido descubierto por encontrarse a la vista y no como resultado de un

registro o inspección; (2) el agente que observe la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba; (3) debe descubrirse el objeto inadvertidamente y (4) que la naturaleza ilícita del objeto resulte evidente a simple vista. Pueblo v. Dolce, 105 DPR 422, 436 (1976); Pueblo v. Báez Lopez, 189 DPR 918, 943 (2013).

El vehículo procesal adecuado para cuestionar la razonabilidad de un registro, incautación o allanamiento irrazonable es la moción de supresión de evidencia, conforme a la Regla 234 de Procedimiento Criminal. 34 LPRA Ap. II, R. 234. Dicha Regla consagra lo siguiente:

> La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
> **(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.**
>
> (b) Que la orden de allanamiento o registro es insuficiente de su propia faz.
>
> (c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.
>
> (d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.
>
> (e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.
>
> (f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente. 34 LPRA Ap. II, R. 234 (énfasis suplido).

Esta disposición, conocida como la norma de exclusión, tiene como objetivos: (1) ofrecer un remedio eficaz a la persona afectada por un registro o allanamiento irrazonable o ilegal; (2) evitar que el Gobierno se beneficie de sus propios actos ilegales; (3) salvaguardar la integridad del foro judicial, y (4) desalentara los agentes del orden público de incurrir nuevamente en las conductas impugnadas. Pueblo v. Blase Vázquez, 148 DPR 618, 628 (1999). A través de esta norma, el ciudadano tiene la facultad de solicitar, antes del inicio del juicio, la exclusión de prueba tanto material como testifical. Íd. La finalidad de la vista previa al juicio, responde, entre otras

cosas, a criterios de economía procesal y ahorro de recursos, lo cual redunda en menor gasto. Íd. En efecto, sería contrario a dichos principios interrumpir el juicio para atender una controversia incidental sobre la admisibilidad de determinada evidencia, cuando su ofrecimiento pudo preverse. Pueblo v. Rey Marrero, 109 DPR 739, 750-751 (1980).

Cuando la moción de supresión de evidencia es acogida en una etapa avanzada del proceso, su efecto inmediato ha sido el de imponer una carga innecesaria sobre el calendario judicial, además de implicar una inversión considerable de recursos en citaciones de testigos y jurados, entre otros gastos. Pueblo v. Blase Vázquez, *supra*, pag. 629.  No obstante lo anterior, si bien se ha establecido que esta moción debe ser considerada en una etapa previa al juicio, la moción puede presentarse durante el juicio, aunque ya haya sido previamente sometida y denegada, si del testimonio ofrecido por la fiscalía en el interrogatorio directo o en el redirecto, surge la ilegalidad del registro. Pueblo v. Hernández Flores, 113 DPR 511, 514 (1982). Negar dicha posibilidad, conllevaría un resultado injusto, toda vez que una norma procesal estaría imponiéndose sobre el derecho constitucional del acusado a la exclusión de prueba obtenida en violación a sus garantías fundamentales.

**C.**

Es norma sólidamente establecida en nuestra jurisdicción que no se favorece la intervención de los tribunales apelativos al momento de revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formulados por el Tribunal de Primera Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Pueblo v. Negrón Ramírez, 213 DPR ___ (2024), 2024 TSPR 41; Pueblo v. Hernández Doble, 210 DPR 850, 864 (2022). Por tal razón, se les concede gran deferencia a las determinaciones de hechos realizadas por los juzgadores de instancia, así como a las adjudicaciones de credibilidad que estos hacen sobre los testigos que declaran ante ellos. Pueblo v. Negrón Ramírez, *supra*, pág. 18. Esto responde al hecho de que son el Juez y el Jurado los que están en mejor posición para aquilatar la prueba testifical al tener la

oportunidad de oír, ver y apreciar el comportamiento de los testigos. Íd., pág. 16; Pueblo v. Hernández Doble, *supra*, pág. 864. Esto adquiere mayor relevancia cuando se trata de la prueba oral desfilada en el juicio. Pueblo v. Negrón Ramírez, *supra*, págs. 16-17. Además, "[e]l veredicto del Jurado, como la sentencia del [J]uez, es un acto investido con la alta dignidad de la magistratura en la función juzgadora de la conducta de los hombres, y no es para echarse a un lado con liviandad e indiferencia". Pueblo v. Figueroa Rosa, 112 DPR 154, 159 (1992).

Ahora bien, se ha reconocido que a pesar de la deferencia que merece la determinación apelada, la misma podría ser revocada si: (1) se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto o (2) si la prueba no concuerda con la realidad fáctica, es increíble o imposible. Pueblo v. Santiago, 176 DPR 133, 148 (2009). Es decir, los tribunales apelativos tienen la potestad de sustituir el criterio de los tribunales de instancia en aquellas ocasiones en que, "a la luz de la prueba admitida, no exista base suficiente que apoye su determinación". Pueblo v. Hernández Doble, *supra*, pág. 865.

Nuestro más alto foro ha definido pasión, perjuicio o parcialidad como "aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio". Pueblo v. Negrón Ramírez, *supra*, pág. 19. Por otro lado, han expresado que "las conclusiones del tribunal se considerarán claramente erróneas si un análisis de la totalidad de la evidencia recibida revela que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico". Pueblo v. Hernández Doble, *supra*, pág. 865.

**D.**

Se considera testimonio estereotipado aquel que se limita a exponer los elementos básicos de un delito, sin aportar los pormenores necesarios que permitan corroborarlos adecuadamente. Pueblo v. Camilo Meléndez, 148 DPR 539, 558 (1999). En nuestra jurisdicción el uso de declaraciones

estereotipadas por cualquier tipo de testigo, debe ser objeto de escrutinio riguroso para evitar que aseveraciones falsas o inexactas vulneren derechos de ciudadanos inocentes. Pueblo v. Acevedo Estrada, 150 DPR 84, 93 (2000). Así pues, con el fin de eludir el menoscabo de derechos constitucionales fundamentales, nuestro máximo foro judicial ha determinado que al evaluar la credibilidad de un testimonio estereotipado se deben tomar en consideración los siguientes criterios:

1. Debe ser escudriñado con especial rigor.

2. Tanto los casos de "la evidencia abandonada" o de "lanzada al suelo" como los casos del "acto ilegal a plena vista" deben, en ausencia de otras consideraciones, inducir a la sospecha de la posible existencia de testimonio estereotipado.

3. Cuando el testimonio es inherentemente irreal o improbable debe rechazarse.

4. El testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles.

5. La presencia de contradicciones o de vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones. Pueblo v. Camilo Meléndez, *supra*, pag. 559.

En otras palabras, en aquellos casos en que se alega la obtención de evidencia a plena vista, los foros judiciales tienen el deber de examinar los testimonios con cautela, considerando la posibilidad de que los mismos sean estereotipados.

**III.**

En el presente caso, el Ministerio Público nos solicitó la revocación de la *Resolución* del TPI a través de la cual se declaró "Ha Lugar" las mociones de supresión de evidencia presentadas por los Recurridos.

Como único señalamiento de error, el Peticionario plantea que el TPI abusó de su discreción al suprimir la totalidad de la evidencia ocupada el 17 de diciembre de 2024, a pesar de que se probó la razonabilidad de la intervención.

Tras una evaluación detenida del expediente ante nuestra consideración, al igual que los autos electrónicos del foro recurrido y la regrabación de las vista de supresión de evidencia, encontramos que el foro a *quo* no incidió, ni se desprende que haya actuado de forma arbitraria, caprichosa, que haya abusado al ejercer su discreción o cometido algún error de derecho. Tampoco el Peticionario demostró que el TPI actuó con perjuicio o cometiera un error manifiesto en su determinación.

Coincidimos con el análisis efectuado por el TPI, el cual, al examinar la prueba, identificó vaguedades y elementos inverosímiles en torno a la forma y al momento en que los agentes del orden público decidieron intervenir con el vehículo en cuestión. Esto es, ningún oficial logró precisar con claridad el origen de las detonaciones que, según se alegaron, motivaron su preocupación por los Recurridos. De hecho, de la prueba desfilada en la vista de supresión se desprende que antes de intervenir con los Recurridos se dirigían en una dirección opuesta al lugar de los hechos. Además, todos coincidieron en que el vehículo marca Nissan de color blanco estaba estacionado y que no observó conducta delictiva ni infracción legal que justificara una acción inmediata de su parte. De hecho, uno de los agentes del orden público que intervino con los Recurridos admitió en su testimonio que el hecho de que un vehículo se encuentre estacionado en un lugar no constituía una infracción que justifique una intervención. Por tanto, no procede arribar a la conclusión de que el registro sin orden judicial objeto de la presente controversia fue uno razonable que de paso a la admisión de la prueba obtenida.

En suma, concluimos que de los autos no se desprende indicador alguno que requiera nuestra intervención con la *Resolución Interlocutoria* recurrida y tampoco hallamos fundamento legal alguno que amerite la expedición del auto de *certiorari*, al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *denegamos* la expedición del auto de *certiorari* ante nuestra consideración.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones